IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-23548-CIV-COOKE/TURNOFF

HUMBERTO REYES,

    Plaintiff,

vs.

AQUA LIFE CORP.,

    Defendant.
_____/

## JOINT SUMMARY OF MOTIONS IN LIMINE

Pursuant to the Court's Scheduling Order [DE 49], Plaintiff and Defendant submit their Joint Summary of the Parties' Motions *In Limine*:[1]

### INDEX

| | |
|---|---|
| Page 2 | Prior worker's compensation proceedings |
| Page 5 | Collateral source payments |
| Page 6 | Settlement discussions |
| Page 7 | Use of the name Pinch-A-Penny |
| Page 8 | Bifurcation of punitive damages issues |
| Page 10 | Evidence of personal wealth/income; |
| Page 11 | Evidence about Infinity Gardens, LLC |

---

[1] Counsel for both parties have cooperated to narrow the issues and shorten arguments in each motion *in limine*. Each argument is less than a page except for the first issue.

1.     **Prior worker's compensation proceedings**

The parties agree that Plaintiff had four prior worker's compensation claims against four previous employers, consisting of (1) Wendy's International, Inc., (2) Community Asphalt Corp., (3) Diversified Coatings & Waterproofing, and (4) All Star Enterprises f/k/a All Star Engineer Contractor.  Where the parties disagree is as follows:

**Plaintiff seeks to exclude references to the prior worker's compensation proceedings as follows:** In effect, the Defendant improperly intends to confuse or mislead the jury and waste time by interjecting and delving into Mr. Reyes' past worker's compensation injuries and claims (i.e., collateral matters) wholly unrelated to the issues in this case. Defendant argues that the other worker's compensation proceedings are allegedly relevant because they go to credibility. However, an examination of the arguments raised by the Defendant makes clear that one would have to engage in mini-trials (i.e., a trial within a trial) in order to address the Defendant's misguided and misleading arguments that Mr. Reyes allegedly made contentions that were contradictory. *See, for e.g.*, Zubulake v. UBS Warburg, LLC, 382 F.Supp. 2d 536, 543 (S.D. NY 2005) Admission of such evidence would also create the potential of a trial within a trial, which is highly disfavored.).  Suffice it to say that to the extent there is any remote relevancy in any of the other workman compensation matters, it should be excluded because it would necessitate undue consumption of time and juridical resources, create substantial danger of undue prejudice, and confuse and mislead the jury.  See Rule 403, Fed.R.Evid.

Additionally, as the court knows, medical related testimony is wholly irrelevant; to establish retaliation under Section 440.205 retaliation, there is no requirement that a worker present any evidence regarding the nature or severity of his or her work related injury; as discussed in Plaintiff's Response to Defendant's misguided Motion for Partial Summary Judgment, there merely needs to be an injury for which the worker attempted to obtain relief under the worker's compensations laws. Evidence is only relevant if it has a tendency to prove or disprove a fact that is of consequence to the determination of the action. Fed.R.Evid. 401. Evidence that is not pertinent to the issues (which can be determined by looking at the pleadings) is immaterial and it would be error to allow the introduction of such evidence.  See Fed.R.Evid. 402.

Similarly any alleged differences in Mr. Reye's overall health or condition,  too is wholly irrelevant to the violations asserted.  Thus even if Mr. Reyes said he could lift "x" lbs to a health care provider but his duty would require him to lift "y" lbs, that is completely irrelevant to this case—particularly given that this is not a worker's compensation benefits proceeding not to mention that Mr. Reyes was discharged from his employment <u>before</u> he had seen these health care providers—Defendant's failure to understand the applicable law on the matter was extensively discussed by the Plaintiff in his Summary Judgment Response. Accordingly, whether Mr. Reyes could physically lift 40 lbs or 50lbs with or without pain, or ride a bicycle at some point after his injury, is completely irrelevant to his retaliation claims.

The Defendant argues that it does not intend to directly or indirectly indicate that the Plaintiff is somehow a serial litigant; however, a review of Defendant's filings in this case clearly reflects that that is exactly what the Defendant intends to imply or infer (see, for e.g.,

D.E. 6-2 @ Page 2 specifically even claiming that the "Plaintiff is a serial litigant."). To the extent the Defendant=s argument is in effect to impugn Plaintiff=s character as litigious, such evidence would clearly be considered inadmissible character evidence and thus inadmissible. See Fed.R.Evid. 404.  The Defendant in response now *alleges* that it does not intend to make any specific reference to Mr. Reyes as allegedly being a serial litigant; rather, it argues, the evidence and argument is necessary for the fact that he was injured before and sought worker's compensation which allegedly shows that he knew how to get treatment under the worker's compensation law, and therefore was not forced to go to Dr. Miguel Chamah, a physician who treated the owners of Aqua Life Corp.  Section 440.205, however, does not require that the employee show that he or she knew how to get worker's compensation treatment irrespective of the employer's cooperation in order to have a claim against the employer for violation of its provisions (to be sure, an employee's knowledge is irrelevant given that the focus is on the employer's conduct). Accordingly, the fact that Mr. Reyes Aknew how to get treatment under the worker's compensation law@ is simply a  backdoor and improper manner by the Defendant to essentially imply that Mr. Reyes has had other worker=s compensation claims and is a Aserial litigant.@ Because evidence of other worker=s compensation claims or proceedings is of no consequence to this employment dispute, the only purpose it can serve is to deliberately misguide the jury and serve as some sort of a impermissible character evidence so as to misleadingly cast Mr. Reyes in a negative light or cause a false/negative implication to arise. Defendant's suggestion that the Court can give a limiting instruction to the jury regarding Mr. Reye's other worker's compensation injuries and claims would merely only highlight and worsen the matter.  As other injuries and worker's compensation claims are completely irrelevant to the issues in this case and gives rise to substantial Rule 403 concerns, preclusion is necessary so as to avoid confusing or misleading the jury or unfairly prejudicing the Plaintiff—the proceeding should be focused on the facts of this case.

**Defendant's opposition:** First, there were some highly relevant statements made by Plaintiff in his Wendy's worker's compensation case. Plaintiff had one worker's compensation case against Wendy's (where he worked concurrent to his employment with Defendant), wherein he was represented by counsel, at the same time he allegedly was injured on February 23, 2009 while working for Defendant.  Plaintiff also had three prior worker's compensation claims with three prior employers.  Plaintiff told a physician in an Independent Medical Examination ("IME") in the Wendy's case that "he quit" his job at Aqua Life Corp; the doctor placed Plaintiff's statement in an IME report.  That contradicted Plaintiff's contention in this case that he was discharged. In the Wendy's case, Plaintiff sought larger benefits by telling another IME physician that he had tingling in his hands while "riding his bicycle" during the months March – June 2009, i.e., the four months immediately following his late-February 2009 injury in this case; but in the this case, Plaintiff represented that he was in severe pain by placing any weight on his injured foot and ankle and could not perform work even at the sedentary level, which is contrary to riding his bicycle for four months.  Plaintiff also represented to another IME physician in the Wendy's case

that it hurt to lift anything 40-50 lbs; but contradicting that, in this case the evidence will show that the Plaintiff almost daily lifted pool supplies in excess of 50 lbs with no apparent problem.

Second, Plaintiff also had three prior worker's compensation claims with three prior employers. Plaintiff's four prior worker's compensation claims are relevant to show that Plaintiff had substantial experience with and knew how to get treatment under the worker's compensation law, and therefore was not forced to go to Dr. Miguel Chamah, a physician who treated the owners of Aqua Life Corp. This is highly relevant evidence and bears on credibility.

Defendant does not seek to make any reference to Plaintiff being a serial claimant or anything like that. In his January 30, 2012 Affidavit opposing summary judgment [DE 92-3 at p. 2], Plaintiff represented that Aqua Life Corp. President Ana Ibarra failed to "assist me in filing a claim for worker's compensation to receive medical care and benefits" (at ¶ 7) and "[s]ince I was not given a choice, and out of pain and desperation, and out of fear in refusing to follow Ms. Ibarra's directive, I went and apparently saw a Dr. Chamah." However, there is substantial evidence that Plaintiff knew how to file a worker's compensation by himself and how to receive worker's compensation medical treatment independent of his employer. Plaintiff had that knowledge because he had initiated four prior worker's compensation claims against four prior employers before Aqua Life Corp. Just a few months before his alleged accident in this case, Plaintiff had been litigating with his attorney a worker's compensation case against Wendy's and was seen by multiple physicians through the worker's compensation process. Under Rule 402, FRE, "all relevant evidence is admissible." Under Rule 403, FRE, "evidence may be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Under the circumstances of Plaintiff's representations in his Affidavit, which is testimony in this case, the evidence of his knowledge of how to initiate the worker's compensation process on his own and how to get treatment on his own under that process is not *substantially* outweighed by the danger prejudice or confusing or misleading the jury. However, Defendant suggests that the Jury be instructed that it should not infer that there is anything improper or inappropriate for Plaintiff to have four prior worker's compensation cases and that the relevance of those cases is limited solely to the Plaintiff's knowledge about how to initiate the worker's compensation process and how to get treatment on his own under that worker's compensation process.

    2.       **Plaintiff seek to exclude collateral source payments**

*Plaintiff's argument in support:* The Defendant has stated that it seeks to introduce benefit payment received from such entities as the worker's compensation carrier or unemployment benefits so as to purportedly offset any recovery in this case; however, it is well established that under the collateral source rule, a defendant may not mitigate damages from collateral payments where the plaintiff has been compensated by an independent source, such as insurance, continued wages or disability payments. See Restatement (Second) of Torts Sec. 920A(2) (1979); <u>Brown v. A.J. Gerrard Manufa cturing Co</u>., 715 F.2d 1549, 1550 (11th Cir.1983) (en banc)(applying the collateral source doctrine to unemployment benefits in employment action relating to back pay award); <u>Thurman v. Yellow Freight Systems, Inc</u>., 90 F.3d 1160 (6th Cir.1996)( ALike unemployment benefits, worker's compensation benefits are a collateral source that should not be deducted from back pay.@ id. at 1171)-- the logic is that while collateral source payments do represent an additional benefit to the plaintiff, the view is that as between the employer, whose action caused the discharge, and the employee, who may have experienced other noncompensable losses, it is fitting that the burden be placed on the employer. Accordingly, the Defendant is not permitted to argue or make references to any collateral source payments.

*Defendant's argument in opposition:*
Since Plaintiff's worker's compensation retaliation claim is governed by Florida law, Florida's treatment of collateral source damages applies in the analogous context of negligence claims. Florida's analogous treatment of negligence tort claims would apply here. Under § 768.76, Florida Statutes, "the court shall reduce the amount of such award by the total of all amounts which have been paid for the benefit of the claimant, or which are otherwise available to the claimant, from all collateral sources." Therefore, Plaintiff's recovery of unemployment benefits, worker's compensation wage benefits, and recovery from settling his worker's compensation claim wherein he received cash payment separate and distinct from medical treatment are admissible. These clearly are directly relevant to damages in his retaliation/discharge case under § 440.205, Florida Statutes.

### 3.     Plaintiff and Defendant seek to exclude references to settlement related discussions.

*Plaintiff's argument in support*:

There are several settlement documents (including a letter from Mr. Reyes' counsel regarding settlement and even worker's compensation settlement documents) which the Plaintiff requests not be introduced, or otherwise referred or alluded to   Any such settlement related communication and the content of same is wholly improper and clearly excluded by Rule 408, Fed.R.Evid.  Defendant should be precluded from arguing, making any reference or introducing any such documents.

The Defendant seeks to exclude a letter from the Defendant's corporate representative on the argument that since a settlement related correspondence letter from an attorney cannot be admitted, no letters from anyone should be admitted; one, however, does not follow the second. Here, the letter from the company official merely sets forth factual detail about Mr. Reyes' employment; it reads in its entirety as follows:

> " Mr. Reyes is a former employee of our company that was paid on a salary basis. His salary was $450.00 per week for the time period he was employed with our company.  If   you need any further information please contact me at 305-…-…."

In effect the Defendant wants to cause to Court to admit clearly inadmissible settlement letter from an attorney by interjecting objection to a letter from its own representative which sets forth nothing but factual details about Mr. Reyes' employment history.

Defendant's argument:
There are two settlement case documents preceding the filing of this case: (1)  Plaintiff's former attorney Eddy O. Marban's July 2, 2010 demand letter and (2) Raymond Ibarra's letter responding to Mr. Marban's settlement demand.  Both documents are settlement correspondence back and forth.  If Mr. Marban's letter is inadmissible, so should be Mr. Ibarra's reply letter.

Since Plaintiff's worker's compensation retaliation claim is governed by Florida law, Florida's treatment of collateral source damages applies in the analogous context of negligence claims.  Florida's analogous treatment of negligence tort claims would apply here.  Under § 768.76, Florida Statutes, "the court shall reduce the amount of such award by the total of all amounts which have been paid for the benefit of the claimant, or which are otherwise available to the claimant, from all collateral sources."  Therefore, Plaintiff's recovery of unemployment benefits, worker's compensation wage benefits, and recovery from settling his worker's compensation claim wherein he received cash payment separate and distinct from medical treatment are admissible.  These clearly are directly relevant to damages in his retaliation/discharge case under § 440.205, Florida Statutes.

### 4. Defendant Aqua Life Corp. seeks to prevent being called APinch-A-Penny Corporation or any variation of that corporate name.

*Defendant's argument in support:* Defendant Aqua Life Corp. is a small, family-owned business that licenses the right to use the Pinch-A-Penny name as a franchisee. Under Rule 403, FRE, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Defendant is not a large and wealthy company nor is Defendant the Pinch-A-Penny Corporation. The use of the name APinch-A-Penny@ has no real probative value and is highly prejudicial and misleading. It gives the misleading impression that Aqua Life Corp. is a large corporate target from which to redistribute wealth to the Plaintiff irrespective of the merit of the claim. The use of the name APinch-A-Penny@ is totally unnecessary to the Plaintiff=s case other than to cast Defendant Aqua Life Corp. in this misleading light. It is sufficient for Plaintiff to refer to Aqua Life Corp. as a family-owned retail pool store. Especially when punitive damages are potentially at issue in this case, Defendant Aqua Life Corp. respectfully requests that use of the name Pinch-A-Penny Corporation or a variation of that corporate name be excluded from consideration by the Jury.

*Plaintiff's argument in opposition:*

The Defendant <u>itself</u> refers to itself as Pinch-A-Penny (the very name that it holds itself out to the general public) and has even filed documents formally referring to itself as "Pinch-A-Penny #43"; accordingly, referring to the Defendant by the name that it itself uses can hardly be said to be misleading. Additionally, any alleged concerns over Defendant=s wealth is misguided given that evidence regarding its net worth is relevant and admissible in light of the issue of punitive damages. In effect, the Defendant both ignores the record and the issues in this case, and is making much-to-do over nothing.

In fact in light of the Defendant's efforts to bifurcate the issue of the amount of punitive damages to be awarded, any utilization by the Defendant of the term "small" or "family-owned" or any other similar description by the Defendant should be precluded as (consistent with Defendant's logic) the jury is highly likely to be mislead into believing that it is allegedly a small corporate target and as a result improperly reduce damages irrespective of the merit of the claim. Accordingly, to the extent the Defendant seeks to have the Plaintiff refer to it by its formal name (which is any of the above-referenced variations noted by the Plaintiff), then by the same logic and rationale so as to avoid any alleged implications, it is impermissible for the Defendant then to require or to refer to gratuitously itself as an allegedly "small" or a family-owned retail pool store neither its alleged physical size nor the nature of the ownership is irrelevant to the issues. As such, the Plaintiff seeks to exclude any reference by the Defendant that is allegedly small, family-owned or any similar inappropriate references; the Defendant should only refer to itself as Aqua Life Corp. or Pinch-A-Penny.

**5.     Defendant Aqua Life Corp. seeks to bifurcate the Jury's decision as to punitive damages issues until after a finding of liability and the Court determines punitive damages may be considered by the Jury.**

*Defendant's argument in support:* Under Rule 403, FRE, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Evidence of Defendant's net worth would be prejudicial to the Defendant by giving the false impression it could afford an adverse verdict irrespective of the merits of the Plaintiff's claims for retaliation and wages owed and the Defendant's defenses.

*Plaintiff's argument in opposition:* The Defendant believes that since the Florida statute provides a defendant with the right to seek bifurcation of the amount of punitive damages, then this Court must follow the state statute and bifurcate the issue of the amount of punitive damages.  Contrary to Defendant=s argument, bifurcation is a procedural matter governed by Fed.R.Civ.P. and, under *Erie* , the vast number of federal courts have held that that the bifurcation provisions of state punitive damages statutes are not binding on the federal courts. See, e.g., American Computech, Inc v. National  Medical Care, Inc., 959 F.2d 239, 1992 WL 66641 (9th Cir. 1992)(holding that trial court properly disregarded state statute which required bifurcation of punitive damages because bifurcation is procedural as governed by Fed. R. Civ. P. 42(b)); Holland v. Harmon, 1999 WL 58226 (N.D. Tex. 1999) (bifurcation is  a matter of procedure to be decided by the court under Fed. R. Civ. P. 42(b); rejecting argument that federal court was required to bifurcate state law punitive damage claim under the state statute); Hamm v. American Home Products Corp., 888 F. Supp. 1037, 1038 (E.D. Cal. 1995) (bifurcation is a procedural issue for the purposes of *Erie* so that a state statute concerning the timing of disclosure of evidence about a defendant=s wealth does not apply in federal court; declining to bifurcate the issue of defendants= wealth from the remaining issues for trial.).

     Rule 42(b) of the Federal Rules of Civil Procedure empowers the district court, in exercising its discretion, to order separate trials in a number of instances. Under this rule, a court has discretion in the matter upon considering the interests of judicial economy and of avoiding confusion. Koch Fuels v. Cargo of 13,000 Barrels of No. 2 Oil, 704 F.2d 1038, 1042 (8th Cir. 1983).  The Defendant's sole argument for bifurcation is that evidence of its wealth is somehow inflammatory rhetoric which could result in the jury finding in Plaintiff=s favor regardless of the merits of the underlying claims. Defendant effectively argues that the jury will disregard its oath, disregard the Court's instructions, disregard the evidence and ignore everything but its wealth in deciding the merits of the case. Additionally, the Defendant intends to argue to the jury that the Defendant is allegedly a small, family-owned business that merely licenses the right to use the Pinch-A-Penny name as a franchisee in effect, the Defendant seeks to misleadingly convey information directly going to its net worth but at the same time deprive the Plaintiff from providing the jury with an accurate picture of Defendant's true and substantial financial status. Accordingly, to the extent the Defendant intends to make any argument or solicit any testimony that in any way can be viewed as going to its financial resources, then the Plaintiff,

understandably, strongly objects to bifurcating the issue of the amount of punitive damages to be awarded. Defendant cannot have it both ways.

**6.     Defendant Aqua Life Corp. seeks to exclude evidence of the personal wealth, net worth, or income of any of its individual corporate owners as well as of some of the individual owners' independent corporation Infinity Gardens, LLC.**

*Defendant's argument in support:* Under Rule 403, FRE, Aevidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  Neither any individual nor Infinity Gardens, LLC was named as

a party in this case. Therefore there no real probative value to such evidence; any probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  Therefore their wealth, net worth, or income should not be allowed because it would be irrelevant, confusing, misleading, and prejudicial to Defendant Aqua Life Corp.

*Plaintiff's argument in opposition:*

The fact that Defendant's owners are not a named defendant is a misplaced argument given that their income and net worth may be relevant in circumstantially assessing Defendant=s net worth, particularly given that the Defendant has deliberately failed to produce much of any financial documents relating to its financial affairs (there is even currently a pending motion to compel such information and documents).

7.   **Defendant Aqua Life Corp. seeks to exclude evidence that Plaintiff performed work for another entity, Infinity Gardens , LLC.**

*Defendant's argument in support:* During his deposition, Plaintiff made repeated reference to performing work for Infinity Gardens , LLC as part of his wage claim in this case.  Under Rule 403, FRE, Aevidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion  of the issues, or misleading the  jury.@  There is no probative value by making any reference to Infinity Gardens , LLC, which is not a party to this case.  Any reference to Infinity Gardens, LLC is confusing and  misleading because it merely adds more corporate information that has no bearing at all on the issues of this case,  namely discharge/retaliation and wages owed.  It is also prejudicial because it indicates that some of the owners of Aqua  Life Corp. own another entity and have wealth. Any probative value of mentioning Infinity Gardens , LLC is substantially outweighed by the danger of confusion of the issues, misleading the jury, and unfair prejudice.

*Plaintiff's argument in opposition:*

Plaintiff is puzzled by Defendant's arguments given that, for example, during the relevant time period the Defendant, through its owners, had Mr. Reyes perform work that was tied to Infinity Gardens (a landscaping company which is co-owned B and even operated out of the same location).  As the Court is aware, in addition to a retaliation claim, there is a second count relating to unpaid wages.  Reference to Infinity Gardens is thus relevant as it is tied to such things as the wage claim.

Respectfully submitted,

| | |
|---|---|
| Sina Negahbani, Esq. | Peter T. Mavrick, Esq. |
| Negahbanis@yahoo.com | pmavrickesq@yahoo.com |
| P.O. Box 566055 | 1620 W Oakland Park Blvd., Ste 300 |
| Miami, Florida 33256 | Fort Lauderdale, Florida 33311 |
| Phone: 305-595-9078 | Phone: 954-564-2246 |
| Attorney for Plaintiff | Attorney for Defendant |
| BY:s/Sina Negahbani | BY:s/Peter T. Mavrick |
| Sina Negahbani | Peter T. Mavrick |
| FL Bar No:972673 | FL Bar No.: 0083739 |